**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANDREW RAPPAPORT,**

**Plaintiff,**

**-vs-** **Case No. 6:07-cv-468-Orl-19DAB**

**EMBARQ MANAGEMENT COMPANY, f/k/a LTD MANAGEMENT COMPANY, a foreign profit company; and, EMBARQ FLORIDA, INC., f/k/a SPRINT-FLORIDA, INC., a Florida for profit corporation,**

**Defendant.**

---

# ORDER

This case comes before the Court on the following:

1. Motion of Plaintiffs for Conditional Certification of Collective Action and Permission to Send Court Supervised Notice Advising Similarly Situated Individuals of Their Opt-In Rights Pursuant to 29 U.S.C. section 216(b) and Incorporated Memorandum of Law (Doc. No. 32, filed Oct. 15, 2007); and

2. Opposition of Defendants to Motion of Plaintiffs for Condition Certification of Collective Action (Doc. No. 50, filed Nov. 16, 2007);

**Background**

Plaintiffs Andrew Rappaport and Tracey Bridges filed this action against their former employers, Defendants Embarq Management and Embarq Florida, alleging violations of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1, filed Mar. 16, 2007, ¶ 1.) Plaintiffs now request

permission to send notice to "similarly situated employees" of the Defendants to advise them of their right to "opt-in" to the law suit. (Doc. No. 32.)

The FLSA requires certain employers to pay certain employees increased wages for hours worked in excess of forty hours per week. 29 U.S.C. § 207 (2006). As an enforcement mechanism, section 216(b) of the FLSA allows employees to bring civil actions against these employers to recover unpaid overtime compensation. *Id.* § 216(b). The section also permits employees to file suit on behalf of "similarly situated" employees. *Id.* However, unlike traditional class actions in federal court, potential class members must "opt-in" to the suit by filing "consent in writing to become such a party" with the court where the suit is pending. *Id.* Another difference from traditional class actions is that the FLSA does not statutorily provide for notice to be sent to potential class members. *Compare* 29 U.S.C. § 216(b), *with* Fed. R. Civ. P. 23(c)(2).

In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989), the Supreme Court explained that Congress's failure to include a notice provision in section 216(b) did not foreclose courts from authorizing plaintiffs to send "opt-in" notices to similarly situated employees. The Eleventh Circuit has implemented the *Sperling* decision by creating a two-tiered system for certification of FLSA collective action suits. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).[1] In the first tier, the court "conditionally certifies" a class and authorizes notice to be sent to potential class members. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). Once additional class members have joined, the court proceeds to the second and makes

---

[1] The Age Discrimination in Employment Act adopted the "opt-in" provision of the FLSA. 29 U.S.C. § 626(b). Accordingly, the same body of law governs opt-in actions under both Acts. *See, e.g.*, *Grayson*, 79 F.3d at 1096.

a fact specific determination of whether the original and opt-in plaintiffs are truly similarly situated. *Id.*

The original plaintiffs in this case are Andrew Rappaport and Tracey Bridges. Both Plaintiffs describe themselves as "inside salesperson[s]." (Doc. No. 36-2, filed Oct. 22, 2007, p. 2; Doc. No. 36-3, filed Oct. 22, 2007, p. 2.) Tracey Bridges worked for Embarq Management Company as an "inside salesperson performing call center sales" from January of 2003 to January of 2007 in the Apopka and Altamonte Springs offices. (Doc. No. 36-3, p. 2.) Bridges's specific job duties involved handling customer calls and making sales. (*Id.*) Bridges reports receiving directives from supervisors pressuring her to work overtime and not record the excess hours. (*Id.*) She estimates that approximately 200 inside salespersons work at Embarq Management's Altamonte Springs office and 65 inside salespersons work at Embarq Management Company's office in Apopka. (*Id.* at pp. 2-3.) Bridges is aware of other inside salespersons who are interested in joining the lawsuit. (*Id.*)

Bridges's employer, Embarq Management, markets telecommunication services to businesses and consumers in various states. (Doc. No. 50-2, filed Nov. 16, 2007, ¶ 5.) Employees of Embarq Management are split into various functional groups, each headed by a general manager, including the National Sales Center and the Small Business Sales and Care Group. (*Id.* at ¶ 7.) In turn, these groups are further divided and headed by different supervisors. (*Id.* at ¶ 8.) The various supervisors are separated geographically between Embarq's several facilities, and each supervisor manages a particular group of representatives. (*Id.* at ¶ 9.) The supervisor's authority to set schedules and grant or deny overtime requests varies depending on the functional group to whom the supervisor is assigned. (*Id.*, Doc. No. 50-3, filed Nov. 16, 2007, ¶ 9.) Specific job duties also

vary according to functional group and divisions within each group. For example, employees of the National Sales Center's Advanced Small Business unit primarily make sales through pre-established contacts, develop relationships with customers, and receive up to forty percent of their pay in the form of commission. (Doc. No. 50-2, ¶¶ 13-15.) On the other hand, employees of the Small Business Sales and Care group spend approximately half of their time addressing customer concerns and receive only twenty percent of their pay through commission. (Doc. No. 50-3, ¶¶ 9-11.)

Plaintiff Andrew Rappaport states that he was an "inside salesperson performing call center sales" for Embarq Florida from March of 2005 to August of 2006 in the Altamonte Springs office. (Doc. No. 36-2, filed Oct. 22, 2007, ¶ 6.) In that capacity, Rappaport handled customer calls and made sales. (*Id.*) According to Rappaport, he received several directives during that time from his supervisors to work overtime and not record the excess hours. (*Id.* at ¶ 8.) Rappaport estimates that approximately 300 inside salespersons work at Embarq Florida's Altamonte Springs office, and he is aware of "other inside salespersons performing call center sales who have expressed an interest in joining the lawsuit . . . ." (*Id.* at ¶¶ 10-11.)

Defendant Embarq Florida provides local telecommunication services throughout the State of Florida. Similar to Embarq Management, employees are divided among several functional groups, each headed by a general manager. (Doc. No. 50-4, ¶ 6.) The functional groups are in turn split into different teams, all of which are headed by a supervisor. (*Id.* at ¶ 7.)[2]

Plaintiffs filed this motion on October 15, 2006, asking to send notice to "other workers who currently work of have worked for the Defendant [sic] in the capacity as an inside sales agent

[2] Neither party fully explains the relationship between Embarq Florida and Embarq Management, although it appears that both corporations are subsidiaries of the Embarq Corporation. It is also unclear whether Embarq Florida and Embarq Management share common facilities.

performing call center sales for a period of three years prior to the filing of this lawsuit." (Doc. No. 32, p. 2.) In support, Plaintiffs submitted affidavits from four former employees of Defendants who worked in the Apopka and Altamonte Springs offices. (Doc. Nos. 36-4 to -7.) Each affidavit explains that the employee (1) worked for either Embarq Managment, Embarq Florida, or both; (2) was denied overtime compensation; and (3) knows others who are interested in joining the law suit. *Id.* Plaintiffs also submitted similar affidavits from the named plaintiffs, Andrew Rappaport and Tracey Bridges. (Doc. Nos. 36-2 to -3.)

Defendants filed a memorandum in opposition. Defendants argue that Plaintiffs' proposed class is potentially unlimited and that Plaintiffs have failed to produce any evidence that "similarly situated" individuals exist across the entire class. (Doc. No. 50, pp. 1-2.) Defendants submitted several affidavits in support from the general managers in charge of the employees who submitted affidavits and opt-in notices. (Doc. Nos. 50-2 to -4.)

**Standard for Conditional Certification**

FLSA collective actions may be brought by an employee or group of employees on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). The Plaintiffs bear the burden at all times to demonstrate that the class is similarly situated. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Nevertheless, this burden is lighter than "that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23." *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762, 2007 WL 1079291, *2 (M.D. Fla. Apr. 9, 2007) (citing *Grayson*, 79 F.3d at 1096). The plaintiffs need only demonstrate that their positions are "similar, not identical" to the positions held by the potential plaintiffs. *Grayson*, 79 F.3d at 1096. That said, "unsupported allegations that FLSA violations were widespread and that additional plaintiffs" exist

are insufficient to meet the plaintiffs' burden. *Haynes v. Singer, Co., Inc.*, 696 F.2d 884, 887 (11th Cir.1983).

The Eleventh Circuit suggests that district courts utilize a two-tiered approach for the certification of FLSA class actions. *Gonzales*, 2007 WL 1079291 at *2. The first step is the notice stage, where the district court makes the "decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential [plaintiffs]." *Id.* (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001)) (alteration in the original). At this stage, the plaintiff need only demonstrate a "reasonable basis" to believe that similarly situated individuals exist in the proposed class. *Id.* (citing *Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1091 (M.D. Ala. 2003)). The burden at this stage is not heavy and may be met by "detailed allegations supported by affidavits." *Grayson*, 79 F.3d at 1097.

Once the district court grants conditional certification, potential plaintiffs receive notice informing them of their right to "opt-in" to the law suit. *Gonzales*, 2007 WL 1079291 at *3. After the completion of discovery, the defendant may initiate the second tier by moving for "decertification." *Id.* At this point, the court makes a factual inquiry as to whether the claimants are truly "similarly situated." *Id.* If they are not, the district court decertifies the group and dismisses the opt-in plaintiffs without prejudice. *Id.*

Although the "two-tier approach" is popular among the district courts, the Eleventh Circuit has stressed that "[n]othing in [the Eleventh Circuit] precedent . . . requires district courts to utilize this approach." *Id.* (quoting *Hipp*, 252 F.3d at 1219) (alterations in original). And in all cases, the

decision to create an opt-in collective action remains "soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219.

**Analysis**

In this case, Plaintiffs seek to send notice to a class of all "inside sales agent[s]" who currently work or worked for Defendants in the past three years. (Doc. No. 32, p. 2.) Plaintiffs claim that they have "submitted their own Affidavits and Affidavits and Opt-In Notices of other individuals demonstrating that they had sufficiently similar job requirements and were subject to similar pay provisions." (*Id.* at p. 5.) According to Plaintiffs, this is "enough evidence to bring the Plaintiffs' contentions that others would join if notice is provided above pure speculation." (*Id.*) In response, Defendants argue that members of the proposed class are not similarly situated because they held different positions, were employed across two different companies, and were all supervised by different managers with different levels of authority regarding scheduling and authorization to pay overtime. (Doc. No. 50, p. 10-11.) According to Defendants, the only way such a class could be "similarly situated" would be if Plaintiffs alleged a company-wide policy of denying overtime compensation, which is not the case here. (*Id.* at 12-14.)

The Court agrees with Defendants that the proposed opt-in class is unjustifiably broad. While the burden at the "notice stage" is very low, it is not "invisible." *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006 WL 3544737, *2 (M.D. Fla. Dec. 8, 2006). Indeed, federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional

certification where, as here, the plaintiffs attempt to certify a broad class based only the conclusory allegations of few employees.[3]

Plaintiffs define their proposed class as "inside sales agent[s]" employed by Defendants. Exactly what constitutes an "inside sales agent" remains undefined, and this proposed class apparently includes employees from all of Defendants' locations nationwide. The six affidavits Plaintiffs have submitted do not provide any support for this extraordinary request. At most, these affidavits support the position that certain employees at the Apopka and Altamonte Springs offices were required by their supervisors to work overtime without recording the extra hours. The affidavits offer no basis to assume that Defendants deny overtime compensation on a company-wide

---

[3] *See Gonzales*, 2007 WL 1079291 at * 3-4 (attempt to certify a conditional class of hair stylists in 47 stores nationwide based only on affidavits of two local employees); *Tafarella v. Hollywood Greyhound Track, Inc.*, No. 7-600017-CIV, 2007 WL 2254553, *1-5 (S.D. Fla. Aug. 1, 2007) (attempt to certify class of all tip-receiving employees based only on affidavits of casino dealers); *Kessler v. Lifesafer Serv. Providers, LLC,* No. 6:06-cv-1442, 2007 WL 1531395, *1-3 (M.D. Fla. May 25, 2007) (attempt to certify class based only on conclusory allegations); *Ulysse v. Divosta Bldg. Corp.*, No. 06-80338-CIV, 2006 WL 3618449, *2-3 (S.D. Fla. Dec. 11, 2006) (attempt to certify broad class of employees, based on one affidavit containing hearsay and second-hand knowledge, where the plaintiff did not allege the existence of a company-wide policy); *Brooks v. A. Rainaldi Plumbing, Inc.*, No. 6:06-cv-631, 2006 WL 3544737, *1-2 (M.D. Fla. Dec. 8, 2006) (attempt to certify class consisting of four types of laborers among two different companies); *Becker v. Southern Soils, Turf Management Inc.*, No. 6:06-cv-22, 2006 WL 3359687, *3-4 (M.D. Fla. Nov. 20, 2006) (attempt to certify class of various employees based on two affidavits which did not specify the named plaintiffs' job positions); *Robinson v. Dolgencorp*, No. 5:06-cv-122, 2006 WL 3360944, *5 (M.D. Fla. Nov. 13, 2006) (attempt to conditionally certify class of 58,000 nationwide employees based on affidavits of three local employees); *Sandate v. Makotek, LLC*, No. 6:06-cv-601, 2006 WL 4792782, *1-5 (M.D. Fla. Sept. 28, 2006) (attempt to certify class of cable technicians where plaintiffs were employed by one of two branches of the company and failed to show that any other technicians were interested in joining the suit); *White v. KCPAR, Inc.*, No. 6:05-cv-1317, 2006 WL 1722348, *1-4 (M.D. Fla. June 20, 2006) (attempt to certify a company-wide class of cooks based on affidavits of three employees); *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-cv-77, 2006 WL 752831, *1-6 (M.D. Fla. Mar. 23, 2006) (attempt to certify nationwide class of nearly 250,000 employees based on three affidavits).

scale.[4]  Furthermore, Defendants have introduced evidence that these six employees held a variety of positions and were subject to different policies regarding scheduling and overtime approval.[5]

The Eleventh Circuit intended the two-tier system to be an "effective tool for district courts to use in managing . . . often complex [FLSA] cases." *Hipp*, 252 F.3d at 1219.  In light of the evidence presented, sending notice to a company-wide class of employees in different job positions is unlikely to be an effective way to manage this litigation.[6]  Plaintiffs have failed to demonstrate a reasonable basis to believe that similarly situated individuals exist across their proposed class. Thus, Court-authorized notice in this case would function as little more than a fishing expedition. *See Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 799 (E.D. La. 2007)

---

[4] Despite alleging that "Embarq Management Company was well aware that we were working these overtime hours," Plaintiffs do not make any detailed allegations of a company-wide policy that violates the FLSA.  *See Grayson*, 79 F.3d at 1097 (burden at notice stage may be met by "detailed allegations supported by affidavits.")

[5] Typically, the district court will make the decision to conditionally certify a class based solely on the affidavits presented by the plaintiffs.  *Hipp*, 252 F.3d at 1218-19.  However, the affidavits in this case are exceptionally vague and appear to be form documents recycled from previous litigation.  For example, the affidavit of Carlos Bonetti states that he is "aware of other loan resolution consultants who have expressed an interest in joining the lawsuit . . . ." (Doc. No. 36-5, p. 3.)  Defendants are telecommunications companies and deny employing any "loan consultants." (Doc. No. 50, p. 4 n.3.)  As such, the Court deems it necessary to look beyond the evidence submitted by Plaintiffs to determine whether conditional certification is necessary.

[6] While the affidavits in this case may provide some support to conditionally certify a more narrowly-tailored class, Plaintiffs do not limit their request by geography, job position, or functional group.  The only portion of Plaintiffs' motion that could be construed as narrowing the scope of the proposed class is footnote two, which states that "Plaintiff [sic] only seeks to send notice to time share sales agents in Defendants' Altamonte Springs, Florida, office." (Doc. No. 32, p. 4 n.2.)  This sentence is presumably a typographical error since nowhere in the pleadings or record is there any mention of Defendants, telecommunications companies, employing time share sales agents.  However, to the extent Plaintiffs actually intended to include this footnote, the Court finds the evidence insufficient to support their request.

("[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses.")

## Conclusion

The Court **DENIES** Motion of Plaintiffs for Conditional Certification of Collective Action and Permission to Send Court Supervised Notice Advising Similarly Situated Individuals of Their Opt-In Rights Pursuant to 29 U.S.C. section 216(b) and Incorporated Memorandum of Law (Doc. No. 32, filed Oct. 15, 2007).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on December _18__, 2007.

Patricia C. Fawsett

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record